STATE OF NEBRASKA, APPELLEE, V. DELBERT BARNES, APPELLANT.

157 N. W. 2d 879

Filed April 12, 1968. No. 36801.

Hal W. Bauer, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

On a finding of sexual psychopathy defendant was committed by the district court to Lincoln State Hospital. After a hospitalization of nearly 11 years he petitioned in this proceeding for a writ of habeas corpus. The district court denied relief, and defendant has appealed. The issue is whether his fitness for parole or discharge has been established as a matter of law.

The age of defendant was 61 in March 1956, when he joined in an application for examination under the sexual psychopath law. The joinder was precipitated by two complaints and his desire for medical treatment. Defendant related a history of deviate sexual behavior in indiscriminately fondling girls under age 14. He filed an affidavit concluding as follows: "* * * affiant has for a number of years and particularly since 1939 followed a continuous and habitual course of * * * abnormal sexual behavior * * * affiant lacks the power to control his sexual impulses, and * * * his desires are uncontrolled and uncontrollable."

Two physicians having found defendant to be a sexual psychopath, the court entered the commitment order on April 23, 1956. A physician examining defendant at the hospital that day diagnosed "sociopathic personality disturbance, sexual deviation." Four days later Dr. F. M. Swartwood, a general practitioner, reported in part as follows: *"Prognosis:* Guarded. *Recommendations for treatment:* Continued hospitalization with general medical care * * * and discharge as soon as the court will allow it." In June 1959, the hospital superintendent, Dr. F. L. Spradling, recommended that the district court discharge defendant. No action was taken. In May 1960, the hospital superintendent, Dr. Richard W. Gray, filed an

application stating that defendant was a fit subject for discharge. The court denied the application. In January 1962, Dr. Gray filed another application for discharge of defendant. It was denied. On February 9, 1965, defendant was seen in staff conference which was noted in part as follows:

"The patient * * * lives in an open ward building for Men and has full ground privileges. * * * Evidence of insight has not been profound. The patient tends to be somewhat grandiose. * * * his IQ in the past has been about 130. * * * The patient was previously staffed on May 22, 1956 at which time the diagnosis of sociopathic personality disturbance, sexual deviation was continued; prognosis was considered poor; recommendation—institutional care was advised. The patient had psychiatric testing in May of 1956, January of 1962, December of 1963. * * * It is felt, as of now, no additional recommendations for discharge are advisable."

Dr. Edwin A. Coats, superintendent of the hospital since January 1965, examined defendant at the staff conference on February 9. He testified that he was not recommending release and that he had not received a contrary opinion of any psychiatrist.

Dr. Kenneth O. Hubble, a general practitioner and resident in psychiatry at the hospital in 1967, made an interim psychiatric reevaluation of defendant. The report, dated February 21, reads in part: "General mood is one of a certain flavor of excitement and elation. * * * Voice seemed to be normal. No unusual posturing was noted. * * * The patient exhibited an over-productive stream of mental activity in speech * * *. Reaction in responding to questions was trigger-like. * * * In general, * * * emotional reactions seemed within normal limits * * *. It is impossible * * * to say that the patient will or will not have behavior * * * of anti-social degree * * * one could say that in all probability * * * a man of this patient's age, circumstances, and situation, and length of hospitalization would probably not act out in

a sexual deviate way in the future. * * * the patient does not use alcohol. He is 72 years of age. * * * At the present time * * * I do not have an opinion * * * whether the patient is a good candidate for release * * *. The examiner has hearsay from the ward attendant that the 'patient has a peculiar and faraway look in his eyes and facial expression' when small * * * girls * * * visit * * * in the * * * Hospital especially out on the grounds or sidewalk. The patient states that this is a feeling * * * of 'always having a great like for children.' "

Dr. Charles W. Landgraf examined defendant in June 1967, the interview lasting 3 hours. The doctor found evidence of emotional instability, lack of self-awareness, egocentrism, immaturity, overreaction to external stimuli, lack of empathy, some evidence of deviation from reality, and moderate evidence of brain damage. While defendant was taking the Rorschach test, he made no sexual responses, and he appeared wary of the subject. He was a "rather crude * * * primitive individual." Dr. Landgraf diagnosed "schizophrenic reaction, chronic undifferentiated type, mild, of long standing, and with some paranoid features." Lack of evidence of sexual deviate behavior in the past 11 years led him to conclude that defendant was not a sexual psychopath. He preferred, however, release of defendant under supervision to outright discharge.

Dr. C. H. Farrell had made a neuropsychiatric examination of defendant in December 1963. His report reads in part: "* *.* in view of the fact that he has not become involved in any further sexual psychopathic acts, even though he had an opportunity in the last * * * seven years by virtue of * * * ground parole privileges; * * * he should be considered favorable for a trial, on at least a parole status. *DIAGNOSIS*: Sexual psychopath who appears to have made a satisfactory adjustment."

There is no evidence of deviate sexual behavior of defendant since his confinement. Over the years he par-

ticipated in group recreation off the hospital grounds. About once a week in 1966-67, he had permission to leave the grounds to visit his wife, and he did so without supervision. They have been happily married since 1926. She is a cripple working at Goodwill Industries. During the first 2½ years of defendant's confinement she visited him 3 days a week, and afterward, on weekends. She has been longing for his release.

Conflicting testimony of expert witnesses ordinarily raises a question of fact. Fremont Farmers Union Coop. Assn. v. City of Fremont, 179 Neb. 576, 139 N. W. 2d 369. To state the rule is easier than to apply it to this record for two reasons. First, no one should discount the evidence of defendant's advanced age and abstinence from alcoholic liquors, the absence of abnormal sexual acts of defendant during confinement, recommendations of superintendents Spradling and Gray, and other expert opinions favorable to parole or discharge. Second, Dr. Coats was not asked why defendant was unfit for parole or discharge; and counsel did not require the doctor to specify the data upon which the opinion rested. The evidence of course did not establish that the opinion was without basis. We conclude that fitness of defendant for parole or discharge was a question of fact and not a question of law.

The judgment is affirmed.

AFFIRMED.